UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COGENT COMPUTER SYSTEMS, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-280 S |
| | : | |
| TURBOCHEF TECHNOLOGIES, INC. | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT TURBOCHEF TECHNOLOGIES, INC.'S MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY AND COMPEL ARBITRATION**

Defendant Turbochef Technologies, Inc. ("Turbochef") hereby moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the lawsuit in its entirety or, alternatively, to stay the action and to compel enforcement of a contractual arbitration agreement pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. The grounds for this motion are set forth in the accompanying memorandum of law and Declaration of April McLain.

Respectfully submitted,

/s/ *David A. Wollin*
David A. Wollin, #4950
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607
dwollin@apslaw.com

*Attorneys for Defendant Turbochef Technologies, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of August, 2006, I did send a true copy of the within document by electronic means (ECF) to:

Peter P.D. Leach, Esq.
One Charles Street
Providence, RI 02904

/s/ *David A. Wollin*

*388535_1.doc*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COGENT COMPUTER SYSTEMS, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-280 S |
| | : | |
| TURBOCHEF TECHNOLOGIES, INC. | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT TURBOCHEF TECHNOLOGIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY AND COMPEL ARBITRATION**

Defendant Turbochef Technologies, Inc. ("Turbochef") submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the lawsuit in its entirety or, alternatively, to stay the action and to compel enforcement of a contractual arbitration agreement pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.

I. FACTUAL BACKGROUND

Defendant Turbochef is a pioneer in the rapidly emerging world of speed cooking. Declaration of April McLain at ¶ 1. Utilizing patented technologies, Turbochef designs, manufactures and markets a variety of speed cooking solutions for commercial and residential use. *Id*. Turbochef's corporate headquarters are located in Atlanta, Georgia, while its global operations are in Carrollton, Texas. *Id*. at ¶¶ 3, 13.

In early January of 2006, Turbochef and Plaintiff Cogent Computer Systems, Inc. ("Cogent") discussed the possibility of Cogent designing and supplying custom single board micro computers ("boards") to control a customized display Turbochef planned to use for its new

residential ovens. *Id*. at ¶ 5. On or about January 19, 2006, April McLain, Purchasing Agent for Turbochef, spoke to Michael Kelly of Cogent and told him that she would be sending him a Purchase Order for 5,000 boards, but that she only had one signature, that of Max J. Abbott, Senior Vice President for Turbochef's Residential Division, and that she would need to have a second signature for this purchase order from corporate headquarters in Atlanta, Georgia. *Id*. at ¶ 6. Mr. Kelly asked her to send the Purchase Order right away without waiting for the second signature. *Id*.

On January 19, 2006, Ms. McLain faxed to Cogent Purchase Order No. PO600090, dated January 18, 2006, for 5,000 boards. *Id*. at ¶ 7. A copy of the January 19, 2006 fax cover sheet and the Purchase Order that was faxed on that date is attached as Exhibit 1 of Ms. McLain's declaration. In her fax cover sheet, she specifically indicated: "Once I have the second signature, I will re-fax the PO to you." *Id*.

A key provision of the Purchase Order was that, in exchange for Turbochef's payment of $89,500, Cogent would delivery the first 500 boards to Turbochef by no later than April 1, 2006. *Id*. at ¶ 8. Specifically, the Purchase Order stated: "Turbochef will pre-pay for the first 500 of each board totaling $89,500. First 500 of each board are due by April 1, 2006. The remaining 4500 of each board to be delivered over a period of one year." *Id*.

Very quickly after faxing Purchase Order No. PO600090 to Cogent, Ms. McLain learned that the Purchase Order that was faxed was incomplete and had inadvertently omitted language indicating the Purchase Order was subject to additional terms and conditions and would not constitute an offer to buy in the absence of such terms and conditions. *Id*. at ¶ 9. Only a week later, on January 26, 2006, she faxed to Michael Kelly at Cogent the complete Purchase Order No. PO600090. *Id*. at ¶ 10. Exhibit 2 to Ms. McLain's declaration has the complete Purchase

Order faxed to Cogent. Exhibit 2 consists of four pages. The first is the fax confirmation that she sent a 3 page fax to Mr. Kelly at Cogent on January 26, 2006 and that the fax was transmitted to Cogent. The next page is the fax cover sheet and the next two pages after that are the Purchase Order and the Additional Terms and Conditions. The complete Purchase Order also contains the approval from Turbochef's Atlanta, Georgia corporate headquarters which appears to the right of Mr. Abbott's signature. *Id.* at ¶ 11.

Purchase Order No. PO600090 provides that the Purchase Order is subject to additional terms and conditions and will not constitute an offer to buy in the absence of such terms and conditions. *Id.* at ¶ 12. Specifically, the Purchase Order states as follows:

> This Purchase Order is not effective until signed by an authorized representative of TurboChef Technologies, Inc. This Purchase Order is subject to additional terms and conditions (often presented on the reverse side) and will not constitute an offer to buy in the absence of such terms and conditions.

*Id.*

The Additional Terms and Conditions has an arbitration clause requiring any controversy arising out of or relating to the Purchase Order to be resolved by arbitration in Atlanta, Georgia, the location of Turbochef's corporate headquarters, pursuant to the Rules of the American Arbitration Association. *Id.* at ¶ 13. Specifically, Paragraph 16 of the Additional Terms and Conditions provides as follows:

> Any controversy arising out of or relating to this Order including any modification or amendment thereof, shall at the Buyer's option be resolved by arbitration in Atlanta, Georgia, pursuant to the Rules then obtaining of the American Arbitration Association. The parties agree that the arbitrators sitting in any such controversy shall have no power to alter or modify any express provision of this Order, or to make any award which by its terms effects such alteration or modification. The parties consent to the application of the Georgia or Federal Arbitration statutes and to the jurisdiction of the Courts of the United States District Court of the Northern District of Georgia, for all purposes in connection with said arbitration and further consent that any notice, process or notice of motion or other application to either of said Courts or Judges thereof, or

> of any notice in connection with any arbitration or arbitration award hereunder, may be served in or out of the State or Northern District of Georgia by certified or registered mail, return receipt requested or by personal service, provided a reasonable time for appearance is allowed, or in such other manner as may be permitted under the Rules of the American Arbitration Association or of said Courts. Judgment upon the award rendered may be entered by any Court having jurisdiction. Any provision remedy (including, without limitation, injunctive or other equitable relief) which, but for this provision to arbitrate disputes would be available at law shall be available to the parties hereto pending arbitration.

*Id*.[1]

On January 26, 2006, the same day that Ms. McLain faxed the corrected Purchase Order No. PO600090 to Cogent, Turbochef's check for $89,500, reflecting the prepayment for the first 500 boards that were due from Cogent by April 1, 2006, arrived by Federal Express at Cogent's office in Smithfield, Rhode Island. *Id*. at ¶ 15. A copy of an email from Federal Express confirming delivery of the Turbochef check is attached as Exhibit 3 to McLain's declaration.

After being sent the corrected Purchase Order No. PO600090 and the $89,500 check, Cogent never objected at any time to any of the terms of the corrected Purchase Order, including the Additional Terms and Conditions. *Id*. at ¶ 16. Rather, Cogent worked to fulfill the requirements of the Purchase Order. *Id*. However, Cogent failed to produce the 500 boards by April 1, 2006 and has never done so. *Id*. at ¶ 17.

On or about June 14, 2006, Cogent brought this lawsuit against Turbochef, claiming that Turbochef failed or refused to give final approval for the design of the boards ordered pursuant to Purchase Order No. PO600090, failed or refused to provide Cogent with a firm delivery date for the first 500 units and unilaterally terminated the Order. The complaint asserts counts for

---

[1] The Additional Terms and Conditions also contains a Governing Law clause in Paragraph 21: "This Order and the construction of the provisions hereof shall be construed and interpreted in accordance with the laws of the State of Georgia, including Georgia Uniform Commercial Code as in effect on the date hereof, *provided, however*, that Buyer shall be entitled to the benefits of any revisions in the Georgia Uniform Commercial Code thereafter which increase the rights of buyers of goods." *Id*. at ¶ 14.

breach of Purchase Order No. PO600090 (Count I), breach of the implied covenant of good faith and fair dealing (Count II) and unjust enrichment (Count III).

## II. ARGUMENT

### A. Turbochef And Cogent Agreed By Contract To Arbitrate Any Controversy Arising Out Of Or Relating To The Purchase Order

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., a written agreement to arbitrate a dispute arising out of a "transaction involving commerce" is judicially enforceable. 9 U.S.C. § 2. "Commerce" in this context is broadly construed. *Societe Generale de Surveillance, S.A. v. Raytheon European Management & Systems Co*., 643 F.2d 863, 867 (1st Cir. 1981). *Medika Int'l v. Scanlan Int'l,* 830 F. Supp. 81, 84 (D. P.R. 1993), succinctly explains the process the Court must undertake if a contract contains an arbitration clause:

> We look to a contract to determine if it contains an arbitration clause. If such a clause exists, we determine whether the dispute arising under the contract falls within the scope of the arbitration clause. If an arbitration clause exists and the controversy falls under the scope of the clause, then we will direct the parties to proceed to arbitration on the issues as to which the arbitration agreement was signed unless a ground for the revocation of the contractual agreement exists. (citations omitted).

If the arbitration clause covers the dispute, the Court must compel arbitration and stay the proceedings or dismiss the complaint without prejudice. 9 U.S.C. § 3; *see Moses H. Cone Hospital v. Mercury Constr. Corp*., 460 U.S. 1, 29 (1982).

The United States Supreme Court has admonished that, because the Federal Arbitration Act evinces Congress's concern in enforcing private contractual arrangements to arbitrate, federal courts should "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). All doubts must be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582-83 (1960).

In this case, an arbitration clause exists and the dispute clearly falls within the scope of the clause. Turbochef ordered 500 boards from Cogent by virtue of Purchase Order No. PO600090. That Purchase Order's Additional Terms and Conditions has an arbitration clause requiring any controversy arising out of or relating to the Purchase Order to be resolved by arbitration in Atlanta, Georgia, pursuant to the Rules of the American Arbitration Association. Specifically, Paragraph 16 of the Additional Terms and Conditions provides in pertinent part:

> Any controversy arising out of or relating to this Order including any modification or amendment thereof, shall at the Buyer's option be resolved by arbitration in Atlanta, Georgia, pursuant to the Rules then obtaining of the American Arbitration Association.

In addition, the parties consented in Paragraph 16 to the application of the Federal Arbitration Act and to the jurisdiction of the United States District Court for the Northern District of Georgia for all purposes in connection with the arbitration.

Moreover, by agreeing to arbitrate "[a]ny controversy arising out of or relating to this Order," Cogent has entered an agreement to arbitrate that is worded as broadly as possible. Clearly, Cogent's lawsuit falls within the scope of this provision. The heart of Cogent's complaint is that Turbochef breached the terms of the Purchase Order by failing or refusing to give final approval for the design of the boards, failing or refusing to provide Cogent with a firm delivery date for the first 500 units and unilaterally terminating the Order. If this is not a "controversy arising out of or relating to this Order," then it is difficult to envision what type of dispute would be. Although Cogent couches Counts II and III in the language of breach of implied covenant of good faith and fair dealing and unjust enrichment, these claims arise out of

or relate to the Purchase Order and result from the alleged breach of the Purchase Order. As *Medika Int'l*, 830 F. Supp. at 85, noted:

> The First Circuit has interpreted broad language of this nature as covering contract-generated as well as contract-related disputes between the parties. That is, it has rejected the labeling of controversies arising out of or relating to the contract so as to exclude them from the scope of arbitration. *Acevedo Maldonado v. PPG Indus., Inc*. 514 F.2d 614, 616-17 (1st Cir. 1975); *Sea-Land Service*, 636 F. Supp. at 755 (party may not avoid arbitration by splitting its action as one based on contract and one based on tort and then claim arbitration was not applicable to the tort portion of the claim); *Protane Gas*, 613 F. Supp. at 217.

The inescapable conclusion is that the claims raised in Cogent's complaint are subject to the agreement of the parties to arbitrate, and thus this Court should compel the parties to arbitration in accordance with the Purchase Order, the Federal Arbitration Act and the strong policies federal courts have advanced in favor of enforcement of arbitral agreements.

B. The Arbitration Agreement Requires That This Matter Be Arbitrated in Atlanta, Georgia

Cogent agreed pursuant to Paragraph 16 of the Additional Terms and Conditions to arbitrate any disputes arising out of the Purchase Order in Atlanta, Georgia pursuant to the Rules of the American Arbitration Association. The Court should enforce that agreement.

In *Scherk v. Alberto-Culver Co*., 417 U.S. 506, 519 (1974), the United States Supreme Court held that "an agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." This holding reinforced the Supreme Court's earlier holding in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 15, 18 (1972), which established a presumption in favor of forum-selection clauses. As the Court later stated in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), "*The Bremen* and *Scherk* establish a strong presumption in favor of enforcement of freely negotiated contractual choice-

of-forum provisions. Here, as in *Scherk*, that presumption is reinforced by the emphatic federal policy in favor of arbitral dispute resolution."

## III. CONCLUSION

For the foregoing reasons, Turbochef respectfully requests that the Court dismiss (or alternatively stay) Cogent's complaint and compel the parties to arbitration pursuant to Purchase Order No. PO600090.

Respectfully submitted,

/s/ *David A. Wollin*
David A. Wollin, #4950
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607
dwollin@apslaw.com

*Attorneys for Defendant Turbochef Technologies, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of August, 2006, I did send a true copy of the within document by electronic means (ECF) to:

Peter P.D. Leach, Esq.
One Charles Street
Providence, RI 02904

/s/ *David A. Wollin*

388516_1.doc