UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COGENT COMPUTER SYSTEMS, INC. *Plaintiff* | : | |
| VS. | : | C.A. NO. 06-280 S |
| TURBOCHEF TECHNOLOGIES, INC. *Defendant* | : | |

**OPPOSITION TO MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY AND COMPEL ARBITRATION**

Cogent Computer Systems, Inc. ("Cogent") hereby objects to Defendant Turbochef Technologies, Inc.'s ("Turbochef") motion to dismiss or, alternatively, to stay the action and to compel the enforcement of a contractual arbitration agreement pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., on the grounds that there is no contractual arbitration agreement between Cogent and Turbochef.

In further support of its objection, Cogent relies upon the accompanying Memorandum of Law and Affidavit of Michael J. Kelly and attached exhibits.

COGENT COMPUTER SYSTEMS, INC.

By its Attorney,

/s/Peter P.D.Leach

Peter P.D. Leach (#3955)
One Charles Street
Providence, RI 02904
(401) 521-9100
Fax (401) 521-9120
PeterleachLaw@aol.com

/s/ Christine M. Curley
Christine M. Curley
275 Beacon Drive
North Kingstown, RI 02852
(401) 294-0847
Fax. (401) 294-0849
christinecurley@earthlink.net

**CERTIFICATION**

I hereby certify that on this 25th day of August 2006, I did send a true copy of the within document by electronic means (ECF) to:

David A. Wollin
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
dwolin@apslaw.com

/s/ Christine M. Curley

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COGENT COMPUTER SYSTEMS, INC. | : | |
| *Plaintiff* | : | |
| | : | |
| VS. | : | C.A. NO. 06-280 S |
| | : | |
| TURBOCHEF TECHNOLOGIES, INC. | : | |
| *Defendant* | : | |

**MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY AND COMPEL ARBITRATION**

Cogent Computer Systems, Inc. ("Cogent") hereby objects to Defendant TurboChef Technologies, Inc.'s ("TurboChef") motion to dismiss or, alternatively, to stay the action and to compel the enforcement of a contractual arbitration agreement pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., on the grounds that there is no contractual arbitration agreement between Cogent and TurboChef.

## FACTUAL BACKGROUND

The legal precedents governing the resolution of the instant motion clearly dictate that the motion be denied in all respects. Nevertheless, Cogent is compelled to correct the factual inaccuracies in TurboChef's memorandum and the Declaration of April McLain, which evinces an attempt on the part of TurboChef to manipulate the terms of the contract between the parties in order to oust this court of jurisdiction.[1]

On or about January 10, 2006, Terry Gray of TurboChef telephoned Cogent in Rhode Island, inquiring whether Cogent could design and produce a custom single board micro computer to control a customized LCD display TurboChef planned to use for its residential oven product. Over the course of the next few days, Terry Gray and Michael Kelly of Cogent negotiated the

[1] The following facts are taken from the Affidavit of Michael J. Kelly and the attached exhibits.

delivery and price terms for the micro computers. The parties discussed a proposed delivery schedule of 5,000 units over a twelve month period extending from the initial delivery date.

By e-mail communication on January 17, 2006, Cogent transmitted to Terry Gray an offer for Cogent to construct the micro computers for TurboChef, with an initial lot of 500 units at $149 per unit. *Exhibit 1*.[2] On January 18, 2006, Terry Gray orally accepted Cogent's offer and confirmed that the purchase order and check would be sent immediately. The next day, TurboChef sent a Purchase Order, signed by an authorized representative, to Cogent, dated January 18, 2006, whereby TurboChef agreed to purchase 5000 units of the micro computer system. *Exhibit 2*.

Thereafter, Terry Gray copied Cogent on various internal e-mail communications within TurboChef on January 24, 2006 and January 25, 2006 indicating that the initial check would be sent once the delivery schedule was confirmed. *Exhibit 3*. The check was cut, approved and sent by Federal Express that same day, January 25, 2006. *Exhibit 4*. The check was received by Cogent the following day, January 26, 2006. Thus, it is clear that TurboChef viewed the contract as formed upon the transmission of the January 18, 2006 Purchase Order and the approval for the deposit check.

The chronology of this transaction highlights the factual inconsistencies with TurboChef's contention that the Amended Purchase Order containing the Additional Terms and Conditions purportedly sent by facsimile on January 26, 2006 formed the terms of the contract with Cogent. First, the initial Purchase Order does not contain the language on its face referring to additional terms and conditions. Thus, TurboChef did not simply fail to attach additional pages to the Purchase Order, but failed to negotiate these terms altogether.[3] Moreover, it is significant that none of the subsequent purchase orders received from TurboChef for component

[2] The exhibits referenced herein refer to the exhibits attached to the Affidavit of Michael J. Kelly.

[3] Along these lines, the words on the face of the Amended Purchase Order appear to be in a different font that was simply typed on the January 18, 2006 Purchase Order ***after*** it was sent to Cogent, as evidenced by the facsimile record across the top of the page and TurboChef's admission that it was initially sent on January 18, 2006.

parts, other shipments, or modifications to the contract contained these additional terms and conditions, nor did they indicate on their face that additional terms and conditions formed a part of the contract. *Exhibit 6*.

Second, the deposit check was sent to Cogent *before* the Amended Purchase Order was allegedly sent by facsimile to Cogent on January 26, 2006. Clearly, neither the second signature nor acceptance of the Additional Terms and Conditions was necessary for the formation of the contract. Third, the facsimile cover sheet sent by TurboChef does not provide any notice of the newly inserted "Additional Terms and Conditions" but simply points to a second signature being added.[4]

Fourth, there is no evidence that the Amended Purchase Order was actually received by Cogent apart from the transmittal sheet from TurboChef. In this regard, Michael Kelly has attested that he never received the Amended Purchase Order and was not aware of the purported Additional Terms and Conditions until the May 9, 2006 termination letter was sent by TurboChef. Affidavit of Michael J. Kelly. Finally, there is no evidence of any negotiations pertaining to an arbitration agreement, choice of law or forum selection provision between TurboChef and Cogent nor is there evidence that Cogent assented to the Additional Terms and Conditions.

## LEGAL ARGUMENT

### I. The Parties Did Not Agree to a Contractual Arbitration Agreement and, Therefore, there is No Right or Obligation to Arbitrate this Case.

#### A. The Federal Arbitration Act Does Not Compel Arbitration in the Absence of a Valid Arbitration Agreement.

While TurboChef correctly cites to the federal policy favoring arbitration under the

[4] It should be noted that there is not in fact a second signature on the Amended Purchase Order, unless the scribble with the notation 1/06 is actually a second signature. This is in marked contrast to the subsequent March 6, 2006 and May 2, 2006 purchase orders which do contain a discernible second signature. *Exhibit 6*.

Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., it glosses over the threshold issue, that before the federal policy is even triggered, there must be a valid and enforceable contractual arbitration provision. "[D]etermining whether there is a written agreement to arbitrate the controversy in question is a first and crucial step in any enforcement proceeding before a district court. *MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d 426 (1st Cir. 1998). In short, the federal policy presumes a preexisting agreement to arbitrate disputes arising between the parties.

The Federal Arbitration Act sets forth in pertinent part:

> ***A written provision*** in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ***or an agreement in writing to submit to arbitration*** an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. (Emphasis added.)

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418 (1986). "There is no general legal duty to arbitrate private commercial disputes; instead such proceedings are the product of voluntary contractual obligations." *MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d at 429; *McCarthy v. Azure*, 22 F.3d 351, 355, 359 (1st Cir. 1994) ("As a matter of contract, no party can be forced to arbitrate unless that party has entered into an agreement to do so.") (citations omitted). "Thus, a party seeking to substitute an arbitral forum for a judicial forum must show, at bare minimum, that the protagonists have agreed to arbitrate some claims." *Id* at 354-355. When a party contends that no arbitration agreement was reached, the court, not

an arbitrator, must determine the validity of the arbitration agreement. *A.T. Cross Co. Royal Selangor(s) PTE, Ltd*., 217 F.Supp. 2d 229, 234 (D.R.I. 2002).

### B. Pursuant to Basic Contract Principles, there Was No Contractual Arbitration Agreement Between Cogent and TurboChef.

The issue of whether there is a binding arbitration agreement is resolved according to federal common law which "dovetails precisely with general principles of contract law." *McCarthy v. Azure*, 22 F.3d at 355 (citations omitted.) In undertaking this contractual analysis, the court generally looks to state law jurisprudence for the basic principles of contract formation. *Id* at 356. The court severs the arbitration clause from the rest of the contract to determine whether it is binding on the parties. *A.T. Cross Co. Royal Selangor(s) PTE, Ltd*., 217 F.Supp. 2d at 233. The Rhode Island Supreme Court has recently reaffirmed that the validity of an arbitration agreement is a question of law which rests upon basic contract principles and the parties' intent. *Radiation Oncology Associates, Inc. v. Roger Williams Hospital, 899 A.2d 511 (R.I. 2006).*

Under Rhode Island law, for an agreement to be enforceable the parties must evince their objective intent to be bound by its terms. *UXB Sand & Gravel, Inc., v. Rosenfeld Concrete Corp*., 641 A.2d 75, 79 (R.I. 1994). The essential elements of a contract are "competent parties, subject matter, a legal consideration, mutuality of agreement and mutuality of obligation. *Rhode Island Five v. Medical Associates of Bristol County, Inc.*, 668 A.2d 1250, 1253 (R.I. 1996). Mutuality of obligation, achieved when both parties are bound legally by the making of reciprocal promises, fulfills the consideration requirement of contracts. *Centerville Builders, Inc. v. Wynne*, 683 A.2d 1340 (R.I. 1996).

Accordingly, consideration is the test for enforceability of contracts. *Hayes v. Plantation Steel Co.*, 438 A.2d 1091,1094 (R.I. 1982). Legal consideration is defined under Rhode Island

law as "some right, interest or benefit accruing to one party or some forbearance, detriment or responsibility given, suffered, or undertaken by the other." *Id* at 1094 (R.I. 1982). However, to be valid, the purported consideration must not have been delivered before a promise is executed, that is, given without reference to the promise. *Id*. In this case, the arbitration terms, contained in the Additional Terms and Conditions, were purportedly sent to Cogent ***after*** the contract had been formed. Thus, in order for the contract modification to be valid there must have been separate consideration. As there was no separate consideration for the arbitration provision, it is not valid or binding on the parties.

This Court has followed Rhode Island Supreme Court precedent with respect to the formation and enforceability of arbitration provisions in commercial disputes similar to this case. In *A.T. Cross Co. Royal Selangor(s) PTE, Ltd*., 217 F.Supp. 2d 229, 234 (D.R.I. 2002) the Court looked to the rationale of *Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., Inc*., 697 A.2d 323 (R.I. 1997), and concluded that without evidence of express acceptance of an terms of a draft agreement the arbitration provision contained therein was not a binding or final contract.

In *A.T. Cross*, the defendant argued that the performance of the contract by the parties established an implied in fact contract, which necessarily incorporated all of the terms, including an arbitration provision, in a draft agreement. The Court gave two reasons for rejecting this contention as a matter of law. First, performance by itself does not evidence acceptance of the arbitration clause. *Id* at 236 (citing to *Stanley-Bostitch, Inc.,* 697 A.2d at 326-327). "Performance indicates a willingness to do business with a party, but not necessarily a willingness to submit to arbitration." *Id*. Second, under the Federal Arbitration Act and Rhode Island law, R.I.Gen. Laws § 10-3-2, an arbitration agreement must be clearly written and expressed and not a contract implied in fact. *Id*. Because there was no evidence in the record that objectively manifested the

intention that both parties were mutually bound by the arbitration clause, the Court declared there was no valid and enforceable arbitration agreement and dismissed the arbitration proceedings.

In *Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co.,* the Court addressed whether the an arbitration provision set forth on the reverse side of a boilerplate proposal form sent by the defendant was binding on the parties. The Court found that the arbitration provision was not part of the sales contract because the plaintiff did not sign the document or otherwise expressly assent to its terms. *Id*. The Court held that although there was no dispute that the parties had contracted for the purchase and sale of environmental equipment, it did not mean that the arbitration provision was necessarily part of that contract in the absence of evidence of mutual assent to the arbitration provision itself. *Id* at 326 ("Mutual assent objectively manifested by the writings of the parties is a condition precedent of a binding agreement to arbitrate.") Consequently, the Court held that the plaintiff's retention of the confirmation letter referring to the terms in the proposal, without more, was not sufficient to satisfy the requirement of an express and unequivocal agreement to arbitrate. *Id* at 327.

The holdings of *A. T. Cross* and *Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., Inc.* are equally persuasive here. The internal TurboChef e-mails clearly establish that TurboChef had agreed to Cogent's terms prior to attempting to insert the Additional Terms and Conditions. Exhibit 3. The contract was formed with the transmission of the first Purchase Order and the mailing of the check to Cogent on January 25, 2006. Inasmuch as the arbitration provision contained in the Additional Terms and Conditions was not sent to Cogent until January 26, 2006, the arbitration provision is not a term of the contract. Cogent's performance under the contract is not tantamount to acceptance of the arbitration provision and there is no

evidence of any express assent. Accordingly, there is no valid or enforceable arbitration agreement and the motion to dismiss must be denied in all respects.

### C. Under the Uniform Commercial Code, the Arbitration Provision is Not a Term of the Contract Between Cogent and TurboChef.

Commercial transactions involving the purchase and sale of goods are also governed by the Uniform Commercial Code. The provision relevant to the resolution of the validity and enforceability of the arbitration clause is Section 2-207, R.I. Gen. Laws § 6A-2-207, which addresses "battle of the forms" issues. Section 6A-2-207 provides in pertinent part:

> (1) A definite and seasonable expression of acceptance or a written offer which is sent within a reasonable time operates as an acceptance even though it states terms additional or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become a part of the contract unless:
>
> (a) The offer expressly limits acceptance to the terms of the offer;
> (b) They materially alter it: or
> (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of Title 6A.

Cogent contends that its offer was accepted on January 18, 2006 when the first Purchase Order was sent. However, even if this Court were to find that the Amended Purchase Order was the operative acceptance, or the operative offer which was accepted by Cogent's performance,

the arbitration provision is nevertheless not part of the contract pursuant to § 6A-2-207. Under § 2-207 (1), the Amended Purchase Order was either an acceptance or an offer, despite the new "Additional Terms and Conditions." The Amended Purchase Order was not "expressly made conditional on assent to the additional or different terms" notwithstanding the language on the face of the Amended Purchase Order.[5] This Court has rejected the argument that this type of language requires express assent by the seller and therefore, it does not comply with the mandates of UCC 2-207 (1). *Taft-Pierce Manufacturing Co. v. Seagate Technology, Inc.*, 789 F.Supp. 1220, 1226 (D.R.I. 1992) (if a party wants only its terms to apply it must require express assent to its terms, not simply acceptance of its terms); *Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., Inc.* 697 A. 2d at 328 (in order for an offer to be "expressly conditional" party is required to make it clear that it is unwilling to proceed unless the terms are assented to.)

Moreover, even if express assent was required, it was clearly not given by Cogent. Cogent's failure object to the Additional Terms and Conditions does not equate to an assent to the arbitration provision. Where, as here, the arbitration agreement was never negotiated, the performance was undertaken pursuant to the Purchase Order sent on January 18, 2006, and there was no notice given to Cogent of TurboChef's unilateral insertion of the additional terms, there can be no finding of assent to the additional terms. *See Taft-Pierce Manufacturing Co. v. Seagate Technology, Inc.*, 789 F.Supp. 1220, 1226 (D.R.I. 1992); *Sibcoimtrex, Inc. v. American Foods Group, Inc.*, 241 F.Supp. 2d 104 (D. Mass. 2003) (arbitration provision included on reverse side of invoice unenforceable).

[5] The front of the Amended Purchase Order states: This Purchase Order is not effective until signed by an authorized representative of TurboChef Technologies, Inc. This Purchase Order is subject to additional terms and conditions (often presented on the reverse side) and will not constitute an offer to buy in the absence of such terms and conditions.

Here the parties have proceeded as if there was an agreement; therefore, their performance results in the formation of a contract in accordance with § 6A-2-207 (3). As with a contract formed based upon § 6A-2-207 (1) the terms of the contract are determined by referring back to § 6A-2-207(2). *Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., Inc.* 697 A. 2d at 327-328.

It cannot credibly be disputed that Cogent and TurboChef entered into a contractual relationship. Thus, this Court must determine whether the arbitration provision is a term of that contract. Under § 6A-2-207 (2) additional terms which are material do not become a part of the contract unless expressly agreed to by the other party. An arbitration provision materially alters a contract. *See Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., Inc.* 697 A. 2d at 329; *Sibcoimtrex, Inc. v. American Foods Group, Inc.*, 241 F.Supp. 2d at 105, 110-111 (arbitration provision is a materially alters a contract because it operates as a limitation of remedies.) Consequently, the arbitration provision contained in the Additional Terms and Conditions is not part of the Cogent/TurboChef contract and is not valid or enforceable.

## II. Any Failure on the Part of TurboChef to Include the Arbitration Provision in the January 18, 2006 Purchase Order was a Unilateral Mistake Which Does Not Require Reformation of the Contract.

To permit reformation of the contract, it must appear that by reason of a mutual mistake the parties' agreement fails in some material respect to reflect their prior understanding. *Yates v. Hill*, 761 A.2d 677, 680 (R.I. 2000). A mutual mistake must be proved by clear and convincing evidence. *Ferla v. Commercial Casualty Insurance Company*, 74 R.I. 195, 59 A.2d 714, 716 (1948). A contracting party who commits a unilateral mistake is not entitled to relief. *Greenwood Credit Union* v. *Fleet National Bank*, 675 A.2d 415, 416 (R.I. 1996); *see also*,

*Boccarossa* v. *Watkins*, 313 A.2d 135, 112 R.I. 551 (1973) (unilateral mistake in the formation of a contract affords the errant no relief).

Here, the terms of the first Purchase Order clearly reflected the parties' understanding of the terms of their agreement. In her Declaration, April McLain admits that any purported mistake in failing to include the Additional Terms and Conditions was solely TurboChef's. There was no mutual mistake and, accordingly, there is no basis to reform the contract to include the arbitration provision.

**III. The Forum Selection Provision Is Not Valid and Enforceable Against Cogent.**

As with the arbitration provision, the forum selection clause vesting jurisdiction in Atlanta, Georgia is only enforceable if part of a valid and negotiated contractual agreement. *M/S Breman v. Zapata Off-Shore Company*, 407 U.S. 1, 92 S.Ct. 1907 (1972); *Microfibres, Inc. v. McDevitt-Askew*, 20 F.Supp.2d 316, 320 (D.R.I. 1998).

Based on the arguments set forth above, the forum selection clause is not a valid and enforceable term of the parties' agreement.

## CONCLUSION

For the reasons set forth herein, TurboChef's motion to dismiss or, alternatively, to stay the action and to compel the enforcement of a contractual arbitration agreement should be denied in all respects.

COGENT COMPUTER SYSTEMS, INC.

By its Attorneys,

/s/Peter P.D.Leach
Peter P.D. Leach (#3955)
One Charles Street
Providence, RI 02904
(401) 521-9100
Fax (401) 521-9120
PeterleachLaw@aol.com

/s/ Christine M. Curley
Christine M. Curley
275 Beacon Drive
North Kingstown, RI 02852
(401) 294-0847
Fax. (401) 294-0849
christinecurley@earthlink.net

**CERTIFICATION**

I hereby certify that on this 25th day of August 2006, I did send a true copy of the within document by electronic means (ECF) to:

David A. Wollin
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
dwolin@apslaw.com

/s/ Christine M. Curley