UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COGENT COMPUTER SYSTEMS, INC. | : | |
| *Plaintiff* | : | |
| | : | |
| VS. | : | C.A. NO. 06-280 S |
| | : | |
| TURBOCHEF TECHNOLOGIES, INC. | : | |
| *Defendant* | : | |

**RESPONSIVE MEMORANDUM IN FURTHER SUPPORT OF OPPOSITION TO MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY AND COMPEL ARBITRATION**

Cogent Computer Systems, Inc. ("Cogent") hereby files its response to the reply memorandum filed by Defendant TurboChef Technologies, Inc. ("TurboChef") in support of its motion to dismiss or, alternatively, to stay the action and to compel the enforcement of a contractual arbitration agreement pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., in order to address the issues raised in TurboChef's reply brief. By Order dated September 14, 2006, the Court granted Cogent's Motion for Leave to file this responsive pleading.

**FACTUAL BACKGROUND**

The factual background has been outlined in Cogent's initial opposition memorandum. However, in light of the Affidavit of Terry Gray submitted by TurboChef, certain critical facts are added here for clarification and are set forth in the Supplemental Affidavit of Michael Kelly. ("Supp. Aff.")

The undisputed facts are as follows. In early January 2006, in the time period between January 10, 2006 and January 17, 2006, Terry Gray of TurboChef contacted Michael Kelly of Cogent to discuss designing custom micro computers for TurboChef. (Affidavit of Michael Kelly; Affidavit of Terry Gray) TurboChef solicited Cogent in Rhode Island and the custom

design work and fabrication of the microcomputer boards was to take place in Rhode Island.

After an exchange of e-mails, TurboChef sent a Cogent a one page Purchase Order on or about January 18 or 19, 2006 setting forth the terms and conditions of the contract. This Purchase Order was authorized by TurboChef. (Affidavit of Terry Gray ¶ 12). Cogent received the Purchase Order on or about January 18 or 19, 2006. (Supp. Aff.) Cogent accepted the terms of the Purchase Order and began work on the contract on or about January 19, 2006. (Supp. Aff.)

Based upon the foregoing undisputed facts, the Purchase Order is the contract between the parties. It is undisputed that the Amended Purchase Order contains additional terms and conditions that were not part of the Purchase Order. It is also undisputed that the Purchase Order did not indicate on its face that additional terms and conditions were to be included as part of the contract.

TurboChef attempted to send the Amended Purchase Order to Cogent because TurboChef had failed to include the Additional Terms and Conditions and the typed reference thereto on the Purchase Order. (Affidavit of April McLain). There is no evidence of any negotiations, discussions or communications regarding any of the Additional Terms and Conditions in the Amended Purchase Order either prior to or after the facsimile was purportedly sent.[1]

Cogent never received the Amended Purchase Order. The Amended Purchase Order was not found in Cogent's customer file or computer records. (Supp. Aff.) Michael Kelly never had a conversation with Terry Gray or April McLain regarding the Amended Purchase Order or the transmission of the Amended Purchase Order. (Supp. Aff.) Cogent never accepted the terms of

[1] Terry Gray's Affidavit merely attests to a discussion with Michael Kelly regarding the difficulty in sending the facsimile, it does not attest to any substantive discussions regarding the Additional Terms and Conditions that TurboChef sought to add to the Purchase Order. Likewise, the internal TurboChef e-mail communications forwarded to Cogent merely refers to a purchase order, there is no discussion or reference to the Additional Terms and Conditions.

the Amended Purchase Order. No subsequent e-mails or communications between TurboChef and Cogent referred to the Amended Purchase Order or any of the Additional Terms and Conditions. The Additional Terms and Conditions were not referenced by either party until TurboChef's termination letter of May 9, 2006.

Consequently, there is no factual basis to support a conclusion that the TurboChef and Cogent ever agreed to the arbitration of this dispute in either Rhode Island or Georgia.

**STANDARD OF REVIEW**

Cogent acknowledges that the standard of review on motion to compel arbitration is akin to the summary judgment standard. *See Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002) However, the application of that standard does not require that the motion to compel be granted, nor does it mandate that this Court hold an evidentiary hearing to resolve the legal issues.

When a motion to compel is filed by a Defendant, such as TurboChef, it is the Defendant's burden in the first instance to establish a prima facie case that a contract agreeing to arbitration has been made. *Smarttext Corp. v. Interland, Inc.*, 296 F.Supp. 2d 1257, 1262-1263 (D. Kan. 2003) ("In the context of a motion to compel arbitration, [the application of the summary judgment standard] requires the defendant to present evidence sufficient to demonstrate an enforceable agreement to arbitrate.") TurboChef has failed to meet this threshold burden.

The only evidence TurboChef proffers to support its claim that the Amended Purchase Order was received by Cogent is the facsimile record stating that a facsimile was sent on January 26, 2006, indicating "OK". However, contrary to TurboChef's bald statement that this means that the facsimile was received, all that this record means is that it was successfully ***sent*** from TurboChef's machine. Cogent and Michael Kelly have unequivocally denied that the Amended Purchase Order was ever received by Cogent. Cogent has searched its paper records and

computer records and has failed to locate the Amended Purchase Order. (Supp. Aff.) Moreover, the facsimile line across the top of the Amended Purchase Order recites "January 18, 2006 2:19 P.M." which strongly suggests that the original Purchase Order was modified by TurboChef after it had been sent to and accepted by Cogent.

TurboChef has no other evidence to support its claim that the Amended Purchase Order containing the arbitration provision became a part of the contract. There are no e-mails, correspondence or references to the Amended Purchase Order or the Additional Terms and Conditions in any of the subsequent interactions between Cogent and TurboChef. In fact, none of the other subsequent Purchase Orders sent from TurboChef pertaining to other aspects of the business transaction contained the Additional Terms and Conditions, nor did they contain the typed language on the front indicating that the additional terms were required as part of the contract. Since TurboChef has not met its prima facie case, its motion to compel arbitration must be denied. *See Brown v. Dorsey & Whitney*, LLP, 267 F.Supp. 2d 61, 68 (D.D.C. 2003) (when reviewing a defendant's motion to compel arbitration, the court must give the plaintiff the benefit of all reasonable doubts and inferences that may arise.)

Even if this Court were to conclude that TurboChef has established its prima facie case, the governing law, when applied to the facts of this case, as set forth in the Affidavit and Supplemental Affidavit of Michael Kelly, and as corroborated by the Affidavit of April McLain and Affidavit of Terry Gray, requires that the motion to compel arbitration be denied as a matter of law.

In TurboChef's view, the disputed fact relevant to this motion is whether or not the Amended Purchase Order was received. However, based on the arguments set forth in Cogent's initial memorandum in opposition, and the arguments set forth below, this fact is not material to the dispute, because even if it was received by Cogent it nevertheless did not become a part of

the contract between the parties. As such, this disputed fact does not prevent this Court from denying TurboChef's motion as a matter of law.[2]

## LEGAL ARGUMENT

### I. Rhode Island Law is Applicable to this Case and Requires the Denial of the Motion to Compel Arbitration Because there Was No Agreement to Arbitrate.

#### A. Rhode Island Law is Applicable to the Determination of Whether There is Binding and Enforceable Arbitration Agreement.

Whether a binding arbitration agreement exists is determined under principles of state contract law. 9 U.S.C. § 2. In this case, the validity of the arbitration agreement must be determined in accordance with Rhode Island law.

It is well established that this Court, sitting in diversity, must apply Rhode Island's choice of law rules to the determination of which state's law should be applied to this dispute. *Nortek, Inc. v. Molnar*, 36 F.Supp. 2d 63, 66 (D.R.I. 1999).

Under Rhode Island law, breach of contract claims are governed by the law of the state in which the contract was made; that is, where it was accepted, or where the final act which constitutes the making of the contract occurred. *DeCesare v. Lincoln Benefit Life Co.*, 852 A.2d 474 (R.I. 2004) (law of the state of execution of the contract applied where execution at the home office was the final act which operated as an acceptance of the offer); *Owens v. Hagenbeck-Wallace Shows Co.*, 58 R.I. 162, 192 A. 158 (1937) (contract should be construed in accordance with the law of the state where the contract was made.)

[2] *PHD, Inc. v. Coast Business Credit*, 147 F.Supp. 2d 809 (N.D.Oh. 2001), is inapposite, as it did not address the validity of an arbitration agreement. However, to the extent that summary judgment in that case was denied because one party denied having received an amended purchase order, TurboChef's motion to compel arbitration should be denied on the this basis as well.

One caveat to the general rule is that where a contract was made in one location and intended to be performed in another, the law of the state where the contract is to be performed governs the dispute. *Nortek, Inc. v. Molnar*, 36 F.Supp. 2d 63, 66 (D.R.I. 1999) (citing to *Matarese v. Calise*, 111 R.I. 551, 305 A.2d 112 (1973). In this case there is no doubt that the contract was to be performed in Rhode Island, regardless of it was finally accepted and, therefore, Rhode Island law is applicable.

In addition, as TurboChef acknowledges, the contract between the parties was formed when Cogent accepted the terms of the contract by way of performance, (TurboChef Reply Brief, p.4, 13) that is, when Cogent began work on the project. As attested to by Michael Kelly, Cogent began work on the project once the Purchase Order was received on or about January 18 or 19, 2006. (Supp. Aff.) This statement is supported by the fact that Cogent contemporaneously sent TurboChef's its Non Disclosure Agreement for signature which was executed by TurboChef on or about January 19, 2006. (Affidavit of Michael Kelly)

Thus, the Purchase Order was accepted by Cogent by its performance, which began on or about January 19, 2006.[3] Cogent did not, as argued by TurboChef, wait until it received the deposit check to begin performance, but began its initial design work on or about January 19, 2006, (Supp. Aff.) TurboChef's argument that receipt of the check was a condition precedent to performance is simply wrong. The deposit was a term of the Purchase Order and hence a term of the contract, but it was not a condition precedent to the creation of a valid and enforceable contract. As such, the last act which formed the making of the contract, Cogent's acceptance by way of performance, occurred in Rhode Island and Rhode Island law is applicable. *Tim Hennigan Co., Inc. v. Anthony Nunes, Inc.*, 437 A.2d 1355 (R.I. 1981) (contract deemed made at place where acceptance of offer took place).

[3] Although Cogent argued in its initial brief that TurboChef accepted Cogent's offer by way of the Purchase Order, this analysis was proffered to establish that the terms of the Purchase Order formed the terms of the contract between the parties. Cogent has not altered its position in this regard, but concedes that the actual acceptance of the contract terms occurred when Cogent began performance thereunder.

TurboChef has argued in the alternative that "the Purchase Order was not in force until Cogent received, at its own request, the initial seed money of $89,500 to begin the design and construction of the first 500 boards." (TurboChef Reply, p. 4) Under this analysis, the contract was formed in Rhode Island, where the deposit check was received and deposited by Cogent. Thus, Rhode Island law is applicable to the legal issues in this case.[4]

### B. **Pursuant to Basic Contract Principles, there Was No Contractual Arbitration Agreement Between Cogent and TurboChef.**

The Rhode Island Supreme Court has recently reaffirmed that the validity of an arbitration agreement is a question of law which rests upon basic contract principles and the parties' intent. *Radiation Oncology Associates, Inc. v. Roger Williams Hospital,* 899 A.2d 511 (R.I. 2006).

Here, the operative contract was formed when the first Purchase Order was sent by TurboChef on or about January 18, 2006 and Cogent accepted the terms by beginning performance on or about January 19, 2006. The Purchase Order does not contain an arbitration provision, nor does it contain any indication on its face that additional terms are included. Accordingly, the arbitration provision contained in the Amended Purchase Order is not part of the contract between the parties.

Even assuming *arguendo*, that the Amended Purchase Order was received by Cogent, it did not became a part of the contract between the parties because it was not supported by consideration. Under Rhode Island law, any subsequent modification of a contract must be supported by separate consideration. *Bourg v. Bristol Boat Co.*, 705 A. 2d 969 (R.I. 1998); *Fondedile v. C.E. Maguire, Inc.,* 601 A.2d 87, 92 (1987). Because Cogent had already began performance under the contract, its continued performance cannot be consideration to support

[4] To the extent that this Court deems the interest weighing analysis applicable, the factors enumerated in *Nortek, Inc. v. Molnar*, 36 F.Supp. 2d 63, 66 (D.R.I. 1999), point to the application of Rhode Island law as well.

the modification of the contract. *Hayes v. Plantation Steel Co.*, 438 A.2d 1091,1094 (R.I. 1982).(to be valid, the purported consideration must not have been delivered before a promise is executed, that is, given without reference to the promise.)

## II. The Amended Purchase Order is Not Binding Under Either Rhode Island or Georgia Law.

### A. Under the Uniform Commercial Code, the Arbitration Provision is Not a Term of the Contract Between Cogent and TurboChef.

Cogent's initial opposition memorandum cited to controlling Rhode Island precedent which supports the conclusion that the arbitration provision in the Amended Purchase Order is not valid and enforceable because it was a material alteration of the contract not expressly accepted by Cogent. *Taft-Pierce Manufacturing Co. v. Seagate Technology, Inc*., 789 F.Supp. 1220, 1226 (D.R.I. 1992) (if a party wants only its terms to apply it must require express assent to its terms, not simply acceptance of its terms); *Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., Inc.* 697 A. 2d at 328 (in order for an offer to be "expressly conditional" party is required to make it clear that it is unwilling to proceed unless the terms are expressly assented to.) Clearly, the terms of the Amended Purchase Order were additional terms when compared to either the original Purchase Order or the offer e-mailed from Cogent. Likewise, the arbitration provision was a material alteration of the contract. *See Supak & Sons, Mfg. Co., Inc. v. Perval Industries, Inc.*, 593 F. 2d 135, 136 (4th Cir. 1979) (proposal to arbitrate is a per se material alteration of contract). Thus, in the absence of express acceptance, the arbitration provision is not a part of the contract between the parties.

This conclusion does not change if Georgia law is applied to the facts of this case.

First, if Georgia law is applicable, it is because the Purchase Order sent on or about January 18 or 19, 2006 is the operative acceptance of the contract. (TurboChef Reply, p. 3) Under this scenario, the Purchase Order contains all of the contract terms between the parties, and the arbitration provision is not valid or enforceable unless there are facts to establish that that the Amended Purchase Order was accepted by the parties.[5] As set forth above, there is no such evidence in this case.

Second, in *Dixie Aluminum Products Co., Inc. v. Mitsubishi International Corp*., 785 F.Supp. 157 (N.D. Ga. 1992) the arbitration provision was not considered a material alteration to the parties' contract because, in light of the *twenty-two* separate transactions involving the same documents containing the same arbitration provision, received *without objection*, the buyer could not claim unfair surprise or hardship. The *Dixie* court limited its holding to the facts of the case. Furthermore, the rationale of *Dixie* has been soundly criticized by many courts. *See Trans-Tec Asia v. M/V Harmony Container*, 435 F.Supp. 2d 1015, 1027-1030 (citing cases)

Nevertheless, in this case, this business transaction was the only business relationship Cogent ever had with TurboChef. There was no prior course of dealings between the parties and no prior purchase orders containing an arbitration provision. Consequently, *Dixie* does not alter the conclusion that the arbitration agreement is not enforceable.

### B. TurboChef's Failure to Include the Arbitration Provision in the January 18, 2006 Purchase Order was a Unilateral Mistake Which Does Not Form a Part of the Contract.

Here, the terms of the first Purchase Order clearly reflected the parties' understanding of the terms of their agreement. In her Declaration, April McLain states that TurboChef failed to

[5] The Amended Purchase Order was sent by TurboChef a week after the contract was formed and a week after Cogent had begun work under the contract. This time period cannot be characterized as "only a week" where the new terms materially altered the contract and performance under the contract had already commenced.

include the Additional Terms and Conditions in the Purchase Order sent on or about January 18, 2006. Under controlling Rhode Island law, this inadvertence amounts to a unilateral mistake and, accordingly, the arbitration provision is not part of the contract between the parties. *Greenwood Credit Union* v. *Fleet National Bank*, 675 A.2d 415, 416 (R.I. 1996); *see also*, *Boccarossa* v. *Watkins*, 313 A.2d 135, 112 R.I. 551 (1973).

Georgia law is apposite in this regard: in the absence of equitable considerations, such as fraud or inequitable conduct or other special circumstances, a party will not be relieved from the terms of its contract based upon a unilateral mistake. *Sellers v. Alco Finance, Inc.*, 204 S.E.2d 478 (Ga. App. 1974) (denying reformation of loan agreement based upon negligence attributable to the employee of the lender); *Fore v. Parnell-Martin Companies, Inc.*, 386 S.E. 2d 723 (Ga. App. 1989) (denying relief from contract terms where alleged mistake was the result of the defendant's own lack of diligence).

Here, the purported failure to include the Additional Terms and Conditions in the original Purchase Order was solely attributable to TurboChef's negligence. There was no fraudulent or inequitable conduct on the part of Cogent. As such, there is no basis to rescind the Purchase Order or to compel arbitration under the facts of this case.

Moreover, the Additional Terms and Conditions inserted into the Amended Purchase Order are purely for the benefit of TurboChef. As such it cannot be said that Cogent would gain an unfair or inequitable advantage if the contract was performed in accordance with the Purchase Order. In this regard, this case is readily distinguishable from *First Baptist Church of Moultrie v. Barber Contracting Company*, 377 S.E. 2d 717 (Ga. App. 1989), where the contractor was permitted to rescind its bid based upon a mathematical miscalculation, because the church who had accepted the bid would have gained an inequitable financial windfall from the miscalculation. Also, in *First Baptist*, the contractor was permitted to ***rescind*** its bid; there was no reformation of

the contract based upon the corrected calculations. *See also LPS Construction Co., Inc. v. Georgia Dept of Defense*, 491 S.E. 2d 920 (Ga. App. 1997) (distinguishing *First Baptist* and refusing to rescind contract where contractor inserted terms on envelope that did not comply with bid requirements)

Here, Cogent will not gain any unfair advantage should this litigation be permitted to proceed in this forum, and equity does not require that the original Purchase Order be rescinded for the unilateral benefit of TurboChef.

## CONCLUSION

For the reasons set forth herein and its initial opposition memorandum, TurboChef's motion to dismiss or, alternatively, to stay the action and to compel the enforcement of a contractual arbitration agreement should be denied in all respects.

COGENT COMPUTER SYSTEMS, INC.
By its Attorneys,

/s/Peter P.D.Leach
Peter P.D. Leach (#3955)
One Charles Street
Providence, RI 02904
(401) 521-9100
Fax (401) 521-9120
PeterleachLaw@aol.com

/s/ Christine M. Curley
Christine M. Curley
275 Beacon Drive
North Kingstown, RI 02852
(401) 294-0847
Fax. (401) 294-0849
christinecurley@earthlink.net

**CERTIFICATION**

I hereby certify that a true copy of the within document was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorney received service by electronic means on this 2nd day of October 2006:

David A. Wollin
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
dwolin@apslaw.com

/s/ Christine M. Curley