UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COGENT COMPUTER SYSTEMS, INC. | : | |
| *Plaintiff* | : | |
| | : | |
| VS. | : | C.A. NO. 06-280 S |
| | : | |
| TURBOCHEF TECHNOLOGIES, INC. | : | |
| *Defendant* | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION DENYING ITS TO MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY AND COMPEL ARBITRATION**

Cogent Computer Systems, Inc. ("Cogent") hereby files its response to Defendant TurboChef Technologies, Inc.'s ("TurboChef") Objection to the Report and Recommendation of the United States Magistrate Judge denying its motion to dismiss and to compel arbitration.

For the reasons set forth in the Report and Recommendation, the Magistrate Judge correctly concluded that the Defendant's Motion to Dismiss based upon a claimed arbitration provision in the Second Purchase Order must be denied because TurboChef failed to meet its burden of establishing that there was an express and enforceable arbitration agreement between the parties.

Cogent relies on its Memorandum in Support of Opposition to Motion to Dismiss or, Alternatively, to Stay and Compel Arbitration, its Responsive Memorandum in Further Support of its Opposition to Motion to Dismiss or, Alternatively, to Stay and Compel Arbitration, the Affidavit of Michael J. Kelly and the Supplemental Affidavit of Michael J. Kelly, previously filed with this Court, in support of this Response and said pleadings are hereby incorporated herein by reference as if fully set forth herein.

TurboChef's Objection provides no legal or factual basis to reject or modify the Report and Recommendation and, accordingly, said Report and Recommendation must be affirmed in all respects.

## LEGAL ARGUMENT

### I. The Magistrate Judge Properly Allocated the Burden of Proof to TurboChef to Establish the Existence of a Valid Arbitration Agreement in the First Instance.

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418 (1986). "Thus, a party seeking to substitute an arbitral forum for a judicial forum must show, at bare minimum, that the protagonists have agreed to arbitrate some claims." *McCarthy v. Azure*, 22 F.3d 351, 355, 359 (1st Cir. 1994). When a party contends that no arbitration agreement was reached, the Court, not an arbitrator, must determine the validity of the arbitration agreement. *A.T. Cross Co. Royal Selangor(s) PTE, Ltd.*, 217 F.Supp. 2d 229, 234 (D.R.I. 2002).

When a motion to compel is filed by a Defendant, such as TurboChef, it is the Defendant's burden in the first instance to establish a prima facie case that a contract agreeing to arbitration has been made. *Smarttext Corp. v. Interland, Inc.*, 296 F.Supp. 2d 1257, 1262-1263 (D. Kan. 2003) ("In the context of a motion to compel arbitration, [the application of the summary judgment standard] requires the defendant to present evidence sufficient to demonstrate an enforceable agreement to arbitrate"); *Stein v. Burt-Kuni One, LLC*, 396 F.Supp. 2d 1211, 1213 (D. Col. 2005) (acknowledging that Defendants must present evidence sufficient to demonstrate an enforceable arbitration agreement before burden shifts to plaintiff to raise a genuine issue of fact regarding the making of the agreement.)

Although the standard applied is akin to a summary judgment standard this does not mean, as TurboChef contends, that the denial of its motion to dismiss is somehow transformed into the granting of summary judgment in favor of Cogent, thereby shifting the burden of proof to Cogent. Rather, as with any other summary judgment motion, when evaluating the evidence and affidavits before it, the Magistrate Judge and this Court must review the evidence in the light most favorable to Cogent, as the non moving party, not TurboChef, to determine whether an arbitration agreement exists between the parties. *See S & G Electric, Inc. v. Normant Security Group, Inc.*, 2007 WL 210517 (E.D.Pa. 2007) (when considering a motion to compel arbitration, a court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party); *Brown v. Dorsey & Whitney*, LLP, 267 F.Supp. 2d 61, 68 (D.D.C. 2003) (when reviewing a defendant's motion to compel arbitration, the court must give the plaintiff the benefit of all reasonable doubts and inferences that may arise); *Boulet v. Bangor Securities Incorporated*, 324 F.Supp. 2d 120 (D. Me. 2004) (citing to the consensus that when ruling on a motion to compel arbitration, the Court should consider facts in the light most favorable to the plaintiff.)

When the evidence is viewed in this light it is clear that TurboChef cannot meet its prima facie case that an arbitration agreement exists between the parties, and therefore, its motion to compel arbitration must be denied. *See S & G Electric, Inc. v. Normant Security Group, Inc.*, 2007 WL 210517 (E.D.Pa. 2007) ( "[A] party seeking to compel arbitration must 'show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'")

## II. The Magistrate Judge Correctly Concluded that TurboChef Failed to Establish, as a Matter of Law, that Cogent Had Accepted the Arbitration Provision Under Basic Contract Principles.

The issue of whether there is a binding arbitration agreement is resolved according to federal common law which "dovetails precisely with general principles of contract law." *McCarthy v. Azure*, 22 F.3d at 355 (citations omitted.) In undertaking this contractual analysis, the Court generally looks to state law jurisprudence for the basic principles of contract formation. *Id* at 356. The Court severs the arbitration clause from the rest of the contract to determine whether it is binding on the parties. *A.T. Cross Co. Royal Selangor(s) PTE, Ltd*., 217 F.Supp. 2d at 233. The Rhode Island Supreme Court has recently reaffirmed that the validity of an arbitration agreement is a question of law which rests upon basic contract principles and the parties' intent. *Radiation Oncology Associates, Inc. v. Roger Williams Hospital,* 899 A.2d 511 (R.I. 2006).

This Court has followed Rhode Island Supreme Court precedent with respect to the formation and enforceability of arbitration provisions in commercial disputes similar to this case. In *A.T. Cross Co. Royal Selangor(s) PTE, Ltd*., 217 F.Supp. 2d 229, 234 (D.R.I. 2002) the Court looked to the rationale of *Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., Inc.*, 697 A.2d 323 (R.I. 1997), and concluded that without evidence of express acceptance of an terms of a draft agreement, the arbitration provision contained therein was not a binding or final contract.

Here, there is no evidence that Cogent expressly accepted the terms of the Second Purchase Order. To the contrary, Michael Kelly attested that he was not even aware of the purported additional terms until he received TurboChef's May 9, 2006 letter attempting to terminate their contract. Kelly Aff. ¶ 15. Moreover, even if the Second Purchase Order was received by Cogent, which Cogent denies, there can be no enforceable arbitration agreement

without Cogent's express consent under Rhode Island law. *Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., Inc.*, 697 A.2d 323 (R.I. 1997).

The arbitration provision is also unenforceable under general contract principles because there was no consideration for the "Additional Terms and Conditions" which contained the arbitration provision. The "Additional Terms and Conditions" obviously modified the terms of the First Purchase Order. Under Rhode Island law, any subsequent modification of a contract must be supported by separate consideration. *Bourg v. Bristol Boat Co.*, 705 A. 2d 969 (R.I. 1998); *Fondedile v. C.E. Maguire, Inc.,* 601 A.2d 87, 92 (1987). Even assuming *arguendo*, that the Second Purchase Order was received by Cogent, it did not became a part of the contract between the parties because it was not supported by consideration.[1]

Accordingly, TurboChef's motion to dismiss based upon the arbitration provision was correctly denied as a matter of contract law.

## III. The Magistrate Judge Correctly Concluded that TurboChef Failed to Establish, as a Matter of Law, that the Arbitration Provision Was a Term of the Parties' Contract Under the Uniform Commercial Code.

The Magistrate Judge ruled that because the arbitration provision, and indeed all of the additional terms on the reverse side of the Second Purchase Order, materially altered the terms of the First Purchase Order, the arbitration provision could not be construed as part of the contract between the parties.

[1] Because Cogent had already began performance under the contract, its continued performance cannot be consideration to support the modification of the contract. *Hayes v. Plantation Steel Co.*, 438 A.2d 1091,1094 (R.I. 1982) (to be valid, the purported consideration must not have been delivered before a promise is executed, that is, given without reference to the promise.)

The First Purchase Order was accepted by Cogent by its performance, which began on or about January 19, 2006 and in any event prior to January 25, 2006.[2] Cogent did not, as argued by TurboChef, wait until it received the deposit check to begin performance, but began its initial design work on or about January 19, 2006. Kelly Supp. Aff. ¶ 5. Despite being given the opportunity to contest this statement by way of affidavit, TurboChef does not dispute this fact in its Objection.[3] Accordingly, it must be concluded that the First Purchase Order formed the contract between the parties.[4]

Commercial transactions involving the purchase and sale of goods are governed by the Uniform Commercial Code. The provision relevant to the resolution of the validity and enforceability of the arbitration clause is Section 2-207, R.I. Gen. Laws § 6A-2-207, which addresses "battle of the forms" issues. R.I. Gen. Laws § 6A-2-207 (2) provides in pertinent part:

> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become a part of the contract unless:
>
> (a) The offer expressly limits acceptance to the terms of the offer;
> (b) They materially alter it: or
> (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

[2] Although Cogent argued in its initial brief that TurboChef accepted Cogent's offer by way of the First Purchase Order, this analysis was proffered to establish that the terms of the First Purchase Order contained the terms of the contract between the parties. Cogent has not altered its position in this regard, but concedes that the actual acceptance of the contract terms occurred when Cogent sent out the Non-Disclosure Agreement and began performance thereunder.

[3] Instead TurboChef's cites to UCC 2-206 comment 3 for the proposition that Cogent was obligated to notify TurboChef of its performance under the contract. This simply does not make sense in light of the time constraints the project was under of which both parties were keenly aware. Moreover comment 3 does not alter this conclusion, since "reasonable time by notice" is not defined, and the mailing of the Non Disclosure Agreement and execution thereof put TurboChef on notice that Cogent was to begin work on the schematics.

[4] TurboChef's argument that receipt of the check was a condition precedent to performance is wrong. The deposit was a term of the Purchase Order and hence a term of the contract, but it was not a condition precedent to the creation of a valid and enforceable contract. In this regard, although Terry Gray merely attested that "TurboChef would have to prepay the cost of the first 500 before Cogent would agree to begin the work" (Gray Aff. ¶ 7), the actual e-mail from Kelly simply states that "The first 500 would be prepaid at the start in order to fund the custom target" - it does not state that the prepayment was a condition precedent to the formation of the contract itself. Kelly Aff. *Exhibit 1*.

TurboChef has argued that the arbitration provision, as well as the choice of law and forum selection clause, are terms of the contract because they did not materially alter the First Purchase Order. This contention belies the facts in evidence in this case.

TurboChef has conceded that the First Purchase Order was sent to Cogent on January 19, 2006 after the requisite corporate approvals had been obtained from Max Abbott and Miguel Fernandez.[5] Gray Aff. ¶12. Kelly attested to receiving the First Purchase Order. Kelly Supp. Aff. ¶ 3. Kelly further attested that Cogent began performance thereafter, as evidenced by the e-mailing of the Non Disclosure Agreement, which was necessary for the exchange of schematics. Kelly Supp. Aff. ¶ 6. TurboChef executed the Non Disclosure Agreement on January 19, 2006. Kelly Aff. ª *Exhibit 5*. Thus, all reasonable inferences point to a contract being formed on January 19, 2006 pursuant to the terms of the First Purchase Order which did not contain the arbitration provision.

However, even if this Court were to find that the Second Purchase Order was the operative offer which was accepted by Cogent's performance, the arbitration provision is not part of the contract pursuant to § 6A-2-207. TurboChef cannot credibly dispute that the Additional Terms and Conditions of the Second Purchase Order altered the terms of the First Purchase Order. TurboChef does not assert that Cogent ever expressly assented to the terms of the Second Purchase Order, but argues merely that performance under the contract was made with reference to the Second Purchase Order as opposed to the First Purchase Order, because said terms were not expressly ***rejected*** by Cogent. This argument is premised upon a fundamental misperception of the applicable law.

[5] Although TurboChef has argued repeatedly that the First Purchase Order was not operative because it did not contain a second signature, the fact that all approvals had been obtained verbally and the fact that it was ***actually sent*** to Cogent evinces that this was an authorized purchase order. TurboChef was under no obligation to transmit the First Purchase Order to Cogent (despite Cogent's request to send it "right away") unless it was fully authorized, which it clearly was, based upon Terry Gray's Affidavit. ¶ 12. Accordingly, since the actual approvals had already been obtained by Terry Gray, and the First Purchase Order was actually sent by TurboChef, as "master of its offer" the Magistrate Judge properly concluded that the second signature on the First Purchase Order was an internal administrative requirement that did not affect the enforceability of the First Purchase Order.

Where, as here, the arbitration agreement was never negotiated, the performance was undertaken pursuant to the First Purchase Order sent on January 19, 2006, and there was no notice given to Cogent of TurboChef's unilateral insertion of the additional terms, there can be no finding of assent to the additional terms. *See Taft-Pierce Manufacturing Co. v. Seagate Technology, Inc*., 789 F.Supp. 1220, 1226 (D.R.I. 1992); *Sibcoimtrex, Inc. v. American Foods Group, Inc.*, 241 F.Supp. 2d 104 (D. Mass. 2003) (arbitration provision included on reverse side of invoice unenforceable).

It is not disputed that Cogent and TurboChef entered into a contractual relationship. Thus, this Court must determine whether the arbitration provision is a term of that contract. Under § 6A-2-207 (2)(b) additional terms which are material do not become a part of the contract.

The Magistrate Judge concluded that the arbitration provision materially altered the First Purchase Order based upon the facts presented. The Magistrate Judge did not base its conclusion solely on per se materiality of arbitration provisions, although it could have done so. *See Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., Inc.* 697 A. 2d at 329 (holding that an arbitration provision materially alters a contract); *Sibcoimtrex, Inc. v. American Foods Group, Inc.*, 241 F.Supp. 2d at 105, 110-111 (arbitration provision is a material alteration because it operates as a limitation of remedies); *Supak & Sons, Mfg. Co., Inc. v. Perval Industries, Inc.*, 593 F. 2d 135, 136 (4th Cir. 1979) (proposal to arbitrate is a per se material alteration of contract).

TurboChef has argued that the "modern approach" rejects per se materiality and requires the opposing party to affirmatively establish surprise or hardship. This is not an accurate statement of the current law. *See generally*, 2 Anderson U.C.C. § 2-207:88 (3d. ed.) (updated June 2006) (and cases cited therein) and 2 Anderson U.C.C. § 2-207:113 (3d. ed.) (updated June

2006) (and cases cited therein). Rather, the majority of courts look to the totality of the circumstances, the business transaction at issue and the course of dealing between the parties to determine whether an arbitration provision materially alters the expectation of the parties. *See Sibcoimtrex, Inc. v. American Foods Group, Inc.*, 241 F.Supp. 2d at 109 (rejecting the surprise and hardship test as a consequence of a material alteration, not a definition of it, relying instead on the specific context of all relevant facts and circumstances to determine materiality.)

The cases cited by TurboChef indicate that surprise and hardship are not the only criteria considered by the courts in determining the materiality of an arbitration provision. *See Aceros Prefabricados, S.A. v. Tradearbed, Inc.*, 282 F.3d 92 (holding that usage of trade doctrine established by testimony of the defendant provided basis for incorporation by reference of arbitration provisions into contract); *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 726 (8th Cir. 1976) (notice of conditions printed on reverse side of form constituted acceptance of arbitration provision); *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440 (arbitration agreement contained in appendix to seller's standard contract was incorporated into parties' contract by explicit reference.)

Applying these standards to the totality of the evidence adduced in this case, there can be only one reasonable conclusion: that the arbitration provision materially altered the terms of the parties' agreement and is not part of the contract between the parties.

Here, there was no prior course of dealing between the parties. There was likewise no evidence as to whether the inserted arbitration provision was part of the custom and usage of the trade. The Additional Terms and Conditions amount to twenty three separate paragraphs of new terms. Thus, objectively it must concluded that the addition of the arbitration provision was a surprise. Subjectively, the surprise is evident from Michael Kelly's Affidavit, inasmuch as Cogent had no knowledge of the additional terms until Cogent's May 9, 2006 letter and indeed

had no knowledge of the arbitration provision until TurboChef filed its Motion to Dismiss. Kelly Aff ¶ 15.

Based on the forgoing, the Magistrate Judge correctly ruled that the arbitration provision contained in the Additional Terms and Conditions is not part of the Cogent/TurboChef contract and is not valid or enforceable.

**IV. The Forum Selection and Choice of Law Provision Is Not Valid and Enforceable Against Cogent.**

As with the arbitration provision, the forum selection clause vesting jurisdiction in Atlanta, Georgia and the choice of Georgia law is only enforceable if part of a valid and negotiated contractual agreement. *M/S Breman v. Zapata Off-Shore Company*, 407 U.S. 1, 92 S.Ct. 1907 (1972); *Microfibres, Inc. v. McDevitt-Askew*, 20 F.Supp.2d 316, 320 (D.R.I. 1998).

Based on the arguments set forth above, the forum selection clause is not a valid and enforceable term of the parties' agreement. Likewise, under the Uniform Commercial Code, a forum selection provision materially alters a contract and does not become a term of the contract unless expressly assented to *Sibcoimtrex, Inc. v. American Foods Group, Inc.*, 241 F.Supp. 2d at 110 (citing cases). Consequently, since Cogent did not consent to the forum selection or choice of law terms, these provisions are not enforceable.

## CONCLUSION

For the reasons set forth herein, and in Cogent's memoranda and affidavits previously filed with this Court, the Magistrate Judge's Report and Recommendation should be affirmed in all respects.

COGENT COMPUTER SYSTEMS, INC.
By its Attorneys,

/s/Peter P.D.Leach
Peter P.D. Leach (#3955)
One Charles Street
Providence, RI 02904
(401) 521-9100
Fax (401) 521-9120
PeterLeachLaw@aol.com

/s/ Christine M. Curley
Christine M. Curley
275 Beacon Drive
North Kingstown, RI 02852
(401) 294-0847
Fax. (401) 294-0849
christinecurley@earthlink.net

**CERTIFICATION**

I hereby certify that on this 23rd day of May 2007, I did send a true copy of the within document by electronic means (ECF) to:

David A. Wollin
ADLER POLLOCK & SHEEHAN, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
dwollin@apslaw.com

/s/ Christine M. Curley