UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COGENT COMPUTER SYSTEMS, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-280 S |
| | : | |
| TURBOCHEF TECHNOLOGIES, INC. | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT TURBOCHEF TECHNOLOGIES, INC.'S REPLY BRIEF IN SUPPORT OF ITS OBJECTION TO UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Defendant TurboChef Technologies, Inc. ("TurboChef") submits this reply brief in support of its objection to United States Magistrate Judge David L. Martin's April 26, 2007 Report and Recommendation, recommending the denial of TurboChef's Motion to Dismiss or, Alternatively, to Stay and Compel Arbitration.

Plaintiff Cogent Computer Systems, Inc.'s ("Cogent") response is based on a fundamentally erroneous premise – that in deciding whether TurboChef established a *prima facie* case that there was an enforceable agreement to arbitrate as a matter of law, the evidence must be viewed in a light most favorable to *Cogent*, not TurboChef. To the contrary, in deciding whether TurboChef has established a *prima facie* case of an enforceable arbitration agreement *as a matter of law*, the Court initially must view all the evidence that TurboChef has marshaled in support of that position and construe that evidence in TurboChef's favor. Otherwise, TurboChef has been deprived of its opportunity to make out a *prima facie* case on its own evidence and, if factually disputed, to have a jury ultimately decide that question. That was the fundamental error that the Magistrate Judge made when he ruled that TurboChef could not establish an enforceable

arbitration agreement as a matter of law. That is, the Magistrate Judge's decision ignored key facts in TurboChef's favor, supplied facts and assumptions that found no support in the record and construed the facts in a light most favorable to Cogent.

Cogent's fundamental error informs its entire response to TurboChef's objection. No where does Cogent even attempt to address the substance of TurboChef's argument that – based on *TurboChef's* evidence – there is an enforceable arbitration agreement. This is not surprising because under TurboChef's evidence, the Magistrate Judge could not have ruled that the Second Purchase Order was unenforceable *as a matter of law*.

Ultimately, the Magistrate Judge should have credited all of TurboChef's evidence in initially determining whether TurboChef had made a *prima facie* case of an enforceable arbitration agreement. Had he done so, he would have reached one conclusion – TurboChef could establish the Second Purchase Order containing the arbitration provision was enforceable. Instead, his decision did what Cogent advocates in its response – construe the facts most favorably to Cogent. This was in error.

**ARGUMENT**

I. THE MAGISTRATE JUDGE AND COGENT APPLIED THE WRONG STANDARD

Cogent argues that in deciding whether TurboChef has met its burden of establishing a *prima facie* case that a contract agreeing to arbitration has been made, the Magistrate Judge and this Court must review the evidence in a light most favorable to Cogent, as the non-moving party, not TurboChef. Cogent Response at 2-3. The Magistrate Judge applied this same standard in ruling that TurboChef could not establish a *prima facie* case as a matter of law.

The Magistrate Judge and Cogent fundamentally misapplied the applicable law, as reflected even in the cases cited by Cogent. Specifically, when a motion to compel arbitration is filed, it is treated similarly to that governing a motion for summary judgment. *SmartText Corp. v. Interland, Inc.*, 296 F. Supp.2d 1257, 1262 (D. Kan. 2003). That is, TurboChef must present evidence sufficient to demonstrate an enforceable arbitration agreement. *SmartText Corp.*, 296 F. Supp.2d at 1263; *Stein v. Burt-Kuni One, LLC*, 396 F. Supp.2d 1211, 1213 (D. Colo. 2005). At that stage, the evidence is not construed in a light most favorable to Cogent. Rather, in deciding whether a *prima facie* case has been made, all of TurboChef's evidence must be credited and construed in a light most favorable to it. *See Mandel v. Phoenix, Inc.*, 456 F.3d 198, 204-05 (1st Cir. 2006). Once that burden is met, then the burden shifts to Cogent to raise a genuine issue of material fact as to the making of the agreement. *SmartText Corp.*, 296 F. Supp.2d at 1263; *Stein*, 396 F. Supp.2d at 1213. It is at this latter stage -- and only that stage -- that the non-moving party's evidence is considered and construed in a light most favorable to it, here Cogent. If Cogent then demonstrates a genuine issue of material fact, then a trial on the existence of the arbitration agreement is required. *SmartText Corp.*, 296 F. Supp.2d at 1263; *Stein*, 396 F. Supp.2d at 1213.

The Magistrate Judge and Cogent err in conflating the two steps. They totally undercut TurboChef's ability to meet its burden by focusing on Cogent's evidence and construing the evidence in a light most favorable to Cogent in deciding whether a *prima facie* case had been made out. What the Magistrate Judge should have done was to credit TurboChef's evidence, construed in a light most favorable to TurboChef, in deciding whether TurboChef could prove, as a matter of law, that the Second Purchase Order with the arbitration provision was enforceable. What the Magistrate Judge did instead – and what Cogent advocates now – deprives TurboChef

of its right to present evidence in support of its position and to have a jury decide on its version of the facts, as required by the Federal Arbitration Act, 9 U.S.C. § 4 (providing that if the making of an arbitration agreement is disputed, "the court shall proceed summarily to the trial thereof"). In effect, the Magistrate Judge granted summary judgment in Cogent's favor as a matter of law.

Thus, neither the Magistrate Judge nor Cogent considered the critical evidence that point to one conclusion – the Second Purchase Order with the Additional Terms and Conditions was enforceable. These facts include:

1. No purchase order was valid and enforceable until it had the two authorized signatures from TurboChef, one of which needed to be from TurboChef's Atlanta headquarters, and the only one that did so was the Second Purchase Order. McLain Decl. at ¶¶ 6, 11.

2. Before receiving the Second Purchase Order, Cogent notified TurboChef that it had not received the First Purchase Order or the $89,500 prepayment; but even if Cogent had received the First Purchase Order, that purchase order did not have the two requisite authorized signatures. Gray Decl. at ¶ 13; McLain Decl. at ¶¶ 6-7 & Exh. 1.

3. The purchase order that Cogent did receive was the Second Purchase Order with the two requisite authorized signatures and the Additional Terms and Conditions including the arbitration provision. McLain Decl. at ¶¶ 10-14 & Exh. 2.

4. The Second Purchase Order explicitly indicated it would not be enforceable without the Additional Terms and Conditions. McLain Decl. at ¶ 12 & Exh. 2.

5. The $89,500 prepayment was a condition precedent to contract formation and arrived at Cogent with the Second Purchase Order. Gray Decl. at ¶¶ 7, 12, 17; McLain Decl. at ¶ 15.

6. TurboChef understood that Cogent would not begin work until TurboChef had prepaid for the first 500 boards at $89,500 to fund the work. Gray Decl. at ¶ 12.

7. The Second Purchase Order with the Additional Terms and Conditions was accepted by Cogent through commencement of work and notification of that fact to TurboChef, which under the Additional Terms and Conditions was an explicit method of accepting the purchase order. McLain Decl. at ¶¶ 12, 16 & Exh. 2; Gray Decl. at ¶ 18.

Thus, crediting TurboChef's evidence and construing it in a light most favorable to TurboChef, it was error to conclude that TurboChef could not establish an agreement to arbitrate as a matter of law. That evidence establishes that Cogent received only one purchase order with the two requisite authorized signatures – the Second Purchase Order with the arbitration provision – on the same date the prepayment requirement was met. It was the Second Purchase Order containing the two requisite authorized signatures, and that one alone, that constituted the only valid and enforceable offer. That purchase order containing an arbitration agreement was accepted when Cogent in fact deposited the prepayment check, commenced work and so informed TurboChef, which was an explicit method of accepting the Second Purchase Order. McLain Decl. at ¶¶ 12, 16 & Exh. 2; Gray Decl. at ¶18; UCC § 2-206(1)(b), 206(2) & comment 3.

The remainder of Cogent's objection is based on its own version of the facts, rather than addressing TurboChef's legal arguments based on its *prima face* case. But even with this impermissible standard, Cogent goes too far – making factual assertions that are inaccurate or unsupported by the record or misconstruing TurboChef's position. Most egregiously, Cogent asserts: "TurboChef has conceded that the First Purchase Order was sent to Cogent on January 19, 2006 after the requisite corporate approvals had been obtained from Max Abbott and Miguel

Fernandez." Cogent Response at 7. Relatedly, Cogent asserts: "Although TurboChef has argued repeatedly that the First Purchase Order was not operative because it did not contain a second signature, the fact that all approvals had been obtained verbally and the fact that it was ***actually sent*** to Cogent evinces that this was an authorized purchase order." *Id*. at 7 n.5 (emphasis in original). The evidence that TurboChef submitted is very different – that the First Purchase Order that was sent did not have the two required authorized signatures, that Cogent knew that was the case and asked for the purchase order to be sent anyway and that Cogent's Kelly subsequently contacted TurboChef to indicate that Cogent had *not* received the First Purchase Order. McLain Decl. at ¶¶ 6-7, 11 & Exh. 1; Gray Decl. at ¶ 13. Although Kelly attested to receiving the First Purchase Order, TurboChef's evidence was that he had not and so notified TurboChef. Gray Decl. at ¶ 13. But even if he did, the First Purchase Order lacked the required two signatures. McLain Decl. at ¶¶ 6, 11.

Likewise, Cogent misstates TurboChef's evidence when it challenges the assertion that receipt of the $89,500 prepayment was a condition precedent to contract formation. Cogent asserts that TurboChef's evidence, specifically Mr. Gray's affidavit, shows that the deposit was merely a term of the contract. Cogent Response at 6 n.4 (quoting Gray Aff. at ¶ 7). To the contrary, Gray testified in his affidavit that the prepayment was a condition of contract formation: the prepayment "was a condition of Cogent's agreement with TurboChef." Gray Decl. at ¶ 17. Cogent insisted on the prepayment at the start in order to fund the work needed for the target of the first 500 custom built boards. *Id*. at ¶ 7. This prepayment was in lieu of a non-recurring engineering fee (NRE) for design and engineering work. *Id*. This was confirmed by Gray, who understood, based on his conversations with Kelly, that Cogent would not begin work until TurboChef had prepaid for the first 500 boards at $89,500 to fund the work. *Id*. at ¶ 12.

Cogent also claims, again based on its own view that the First Purchase Order was received, that its commencement of work was alone sufficient to cause a binding contract and that requiring Cogent to notify TurboChef of its performance "does not make sense." Cogent Response at 6 n.3. However, the notification requirement is not TurboChef's doing – it is required by UCC 2-206, comment 3 and was required by Magistrate Judge Martin. *See* Report & Recommendation at 19. As Magistrate Judge Martin recognized, the beginning of performance by an offeree "can be effective so as to bind the offeror *only if followed within a reasonable time by notice to the offeror*." UCC 2-206, comment 3 (emphasis added). "For the protection of both parties it is essential that notice follow in due course to constitute acceptance." *Id*. Cogent fails to offer any evidence of such notification to TurboChef and, for the reasons stated in TurboChef's Objection (at pages 16-18), the Magistrate Judge erred in assuming without any evidence that such notification had occurred prior to the Second Purchase Order being received by Cogent. To the contrary, Gray stated in his declaration that TurboChef understood that Cogent would not begin work until TurboChef had prepaid for the first 500 boards at $89,500 to fund the work. Gray Decl. at ¶ 12.[1] That did not occur until January 26, 2006. McLain Decl. at ¶ 15.

Lastly, Cogent claims that even if the Second Purchase Order is the operative offer accepted by Cogent, the arbitration provision is not part of the contract pursuant to UCC 2-207, because it alters the First Purchase Order and there was no express consent to the additional terms including the arbitration provision. Cogent Response at 4-5. However, if TurboChef's evidence is credited, then there is only one enforceable purchase order – the Second Purchase Order – and thus UCC 2-207 (which addresses the battle of the forms) is completely

[1] There is nothing in the record to support Cogent's assertion (Cogent Response at 6 n.3) that the mailing and execution of the Non-Disclosure Agreement put TurboChef on notice that Cogent had actually begun work on the schematics.

inapplicable. When there is only one enforceable order, that order can be accepted by performance, whether under Georgia law or Rhode Island law. UCC § 2-206(1)(b), 206(2) & comment 3; *J. Lee Gregory, Inc. v. Scandinavian House, L.P.*, 433 S.E.2d 687, 690 (Ga. Ct. App. 1993) (explaining that under the UCC parties may form a contract through conduct); *Stanley-Bostitch, Inc. v. Regenerative Envtl. Equip. Co.*, 697 A.2d 323, 328 (R.I. 1997) ("If . . . the parties proceed as if they have an agreement, their performance results in the formation of a contract.").[2] Cogent concedes as much, because it argues that its performance after receipt of the First Purchase Order was sufficient to create a contract. Cogent Response at 6; *see also* Report and Recommendation at 18-19 (same). This case is even stronger because the Additional Terms and Conditions confirmed that the Second Purchase Order was an "offer" that could be accepted through Cogent beginning work. McLain Decl. at ¶ 12 & Exh. 2.[3] Specifically, Section 1, entitled "Acceptance and Agreement," provides in pertinent part:

> Acceptance of Buyer's offer to purchase the Goods and services hereunder is hereby expressly limited to Vendor's agreement to the terms and conditions contained herein on the face of this Order. If Vendor's quotation, acknowledgment, confirmation, invoice or other form states terms additional to or

---

[2] Cogent's reliance on *A.T. Cross Co. v. Royal Selangor(s) PTE, Ltd.*, 217 F. Supp.2d 229 (D.R.I. 2002), is misplaced. In that case, the course of the parties' written communications and discussions clearly showed there was no meeting of the minds as to the arbitration provision. In particular, the arbitration clause was contained in the first draft agreement, the clause was never agreed upon, and subsequent negotiations and written communications indicated this was still an outstanding issue and subject to debate. *Id*. at 231-32, 236-37. As Judge Lagueux summarized, "the evidence not only shows lack of signatures but also on-going negotiations that featured disputed terms relating to the arbitration agreement." *Id*. at 237. Thus, this Court rejected, among other arguments, the assertion that performance alone, in the face of an ongoing dispute about arbitration, created an implied-in-fact contract to arbitrate. *Id*. at 236-37. Here, by contrast, upon receipt of the Second Purchase Order, Cogent never disputed or engaged in further negotiations regarding the arbitration provision; rather, it accepted TurboChef's deposit and began work which was, as indicated in the text, an appropriate method of accepting the purchase order.

[3] Moreover, the Second Purchase Order was "expressly made conditional on assent to the additional or different terms" (UCC § 2-207(1)) in both the front of the Purchase Order ("This Purchase Order is subject to additional terms and conditions (often presented on the reverse side) and will not constitute an offer to buy in the absence of such terms and conditions."), and in Paragraph 1 of the Additional Terms and Conditions ("If this Order shall be deemed an acceptance of a prior offer by Vendor, such acceptance is limited to the express terms contained herein and on the face of this Order."). This language is markedly different from the less explicit contract language at issue in two cases on which Cogent relies: *Taft-Peirce Mfg. Co. v. Seagate Tech., Inc.*, 789 F. Supp. 1220 (D.R.I. 1992), and *Stanley-Bostitch, Inc. v. Regenerative Envtl. Equip. Co.*, 697 A.2d 323 (R.I. 1997).

> different from those set forth herein, then those terms are deemed to materially alter Buyer's offer and this writing shall be deemed objection to and rejection of such additional and/or different terms. No modification or waiver of these terms and conditions shall be effective unless in writing and signed by a Vice President or above (or equivalent) of Buyer. *Any of the following acts shall constitute an acceptance of Buyer's offer to purchase the Goods or services on the terms and conditions contained herein and on the face of this Order:* (a) the return of an acknowledgment copy of this Order executed by Vendor; (b) Vendor's deliver to Buyer of a sales acknowledgement or other writing, referencing or acknowledging receipt of the Order or agreeing to the description of the Goods and services and the price quantity terms and delivery schedule appearing on the face of this Order or (c) *Vendor's commencement of performance of services or shipment of the Goods.* . . .

*Id*. (emphasis added).

In short, Cogent wants this Court to believe there is only one scenario being advocated by TurboChef – that there are two purchase orders, the Second Purchase Order modifying the First Purchase Order. However, TurboChef's *prima facie* case establishes that there is only one operative purchase order – the Second Purchase Order with the two requisite authorized signatures that arrived when the $89,500 prepayment did and which could be accepted through performance. Accordingly, the Additional Terms and Conditions – containing the arbitration provision and the forum selection clause – are enforceable as part of a valid and negotiated contract between the parties.

## II. EVEN ASSUMING THE FIRST PURCHASE ORDER WAS ENFORCEABLE, THE ARBITRATION PROVISION WAS NOT A MATERIAL ALTERATION

The second erroneous aspect of Cogent's response is its reliance on Rhode Island law and its conclusion that the arbitration provision is a material alteration of the First Purchase Order. As discussed in TurboChef's Objection (at pages 22-23), TurboChef's evidence points to Georgia law, not Rhode Island law, as being applicable in this case for purposes of deciding if TurboChef has met its burden. Specifically, since the Second Purchase Order was the only

enforceable order, the Additional Terms and Conditions contain a Governing Law clause in Paragraph 21 establishing that Georgia law applies in this case.

Moreover, even assuming the First Purchase Order was valid and the Second Purchase Order was a modification, UCC 2-207 would dictate that the Additional Terms and Conditions would still be enforceable. Cogent appears to be of the belief, as was the Magistrate Judge, that an arbitration provision is a *per se* material alteration of the contract. Cogent Response at 8.[4] However, as TurboChef argued in its Objection (at pages 23-26), that is not the "modern approach" which favors a case-by-case materiality determination based upon a thorough examination of the surprise and hardship elements. *See, e.g., Standard Bent Glass Corp. v. Glassrobots OY,* 333 F.3d 440, 448 & n.12 (3d Cir. 2003); *Aceros Prefabricados, S.A. v. Tradearbed, Inc.*, 282 F.3d 92, 100 (2d Cir. 2002); *Trans-Aire Int'l, Inc. v. Northern Adhesive Co.*, 882 F.2d 1254, 1260-62 (7th Cir. 1989); *N&D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 726 (8th Cir. 1976).[5]

Cogent takes issue with this conclusion in three respects. First, it argues that the arbitration provision could never become part of the contract because the arbitration agreement was never negotiated and there was no notice given to Cogent of TurboChef's unilateral insertion

[4] Although Magistrate Judge Martin did not cite the Rhode Island Supreme Court's decision in *Stanley-Bostitch, Inc. v. Regenerative Envt'l Equip. Co.*, 697 A.2d 323 (R.I. 1997), for this purpose, Cogent does so. However, that case too follows the minority "New York" rule. *Id.* at 329 (citing *Diskin v. J.P. Stevens & Co.*, 836 F.2d 47, 50-51 (1st Cir. 1987) (applying New York law and relying on *Matter of Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408, N.Y.S.2d 410, 413-14, 380 N.E.2d 239, 242 (1978)). However, the *Stanley-Bostitch* decision is not applicable here because it did not arise under the Federal Arbitration Act. *Id*. at 326 n.4. More importantly, the so-called New York rule as expressed in *Marlene Industries* is preempted by the Federal Arbitration Act because of its discriminatory treatment of arbitration provisions. *Aceros Prefabricados*, 282 F.3d at 100; *I.K. Berry, Inc. v. Moody*, No. 99 CIV 10968 SAS, 2000 WL 218398, at *5 (S.D.N.Y. Feb. 23, 2000).

[5] Cogent tries to distinguish these cases by indicating that surprise and hardship are not the only criteria considered by courts in determining the materiality of an arbitration provision. Cogent Response at 9. To the contrary, the courts' rulings assessed whether the opposing party had met its burden of showing surprise and hardship. *See, e.g., Standard Bent Glass Corp.,* 333 F.3d at 448; *Aceros Prefabricados,*, 282 F.3d at 100-01.

of the additional terms. Cogent Response at 8.[6] This is merely just another way of stating that an arbitration provision is a *per se* material alteration, which is not the favored approach. To the contrary, the modern approach to UCC 2-207 provides that the arbitration provision becomes part of the contract unless the opponent meets its burden of proving undue hardship and objective and subjective surprise. Thus, "arbitration agreements do not, as a matter of law, constitute material alterations to a contract." *Aceros Prefabricados*, 282 F.3d at 100.[7]

Second, Cogent argues that TurboChef is incorrect in asserting that the "modern approach" rejects *per se* materiality, citing *Anderson* U.C.C. §§ 2-207:88 & 113 (3d ed. 2004) (updated through 2006), and places the burden on the opposing party to establish hardship and surprise. Cogent Response at 8. However, the few cases cited in *Anderson* are at least seven or more years old, some decades old. The modern approach is reflected in the more recent cases cited by TurboChef such as *Standard Bent Glass Corp. v. Glassrobots OY,* 333 F.3d 440, 448 & n.12 (3d Cir. 2003), and *Aceros Prefabricados, S.A. v. Tradearbed, Inc.*, 282 F.3d 92, 100 (2d Cir. 2002).

Third, Cogent argues that the Magistrate Judge did not *solely* rely on *per se* materiality and, in fact, the evidence here is that it was surprised by the Additional Terms and Conditions. Cogent Response at 9-10. However, Cogent has failed to meet its burden of showing objective and subjective surprise and undue hardship – questions of fact to be resolved by the

[6] Relatedly, Cogent argues that any subsequent modification of a contract must be supported by separate consideration. Cogent Response at 5 (citing non-UCC cases). To the contrary, no consideration would be needed for the contract to be binding, whether under Georgia law or Rhode Island law. UCC § 2-209(a).

[7] Cogent relies heavily on *Sibcoimtrex, Inc. v. American Foods Group, Inc.*, 241 F. Supp.2d 104 (D. Mass. 2003). By its own admission, the *Sibcoimtrex* court rejected the approach taken by the Second, Seventh and Tenth Circuits which focuses on surprise and hardship to decide whether an additional term is a material alteration. *Id*. at 108-09. In fact, contrary to well established case law, the *Sibcoimtrex* court never assessed those factors in its decision to find an arbitration provision was a material alteration. No federal court has followed the *Sibcoimtrex* decision, and TurboChef submits that this Court should not be the first. Indeed, even the Magistrate Judge did not rely on the *Sibcoimtrex* decision.

circumstances of each particular case. *Standard Bent Glass*, 333 F.3d at 448 & n.12; *Bergquist Co. v. Sunroc Corp.*, 777 F. Supp. 1236, 1245 (E.D. Pa. 1991). Simply put, Cogent has shown nothing more than an assertion of surprise and raised eyebrows which are not enough. *Standard Bent Glass*, 333 F.3d at 448; *Aceros Prefabricados*, 282 F.3d at 100. Nor has Cogent made any showing of "substantial economic hardship" as a result of the arbitration provision. *Trans-Aire*, 882 F.2d at 1262; *Bergquist*, 777 F. Supp. at 1245. By applying a *per se* rule, Magistrate Judge Martin improperly substituted an unrebuttable presumption in Cogent's favor without any evidentiary support from Cogent itself. This was in error. *See Aceros Prefabricados*, 282 F.3d at 100-01 (burden is on non-assenting party to present evidence in support of surprise and hardship); *Standard Bent Glass*, 333 F.3d at 448 & n.12 (same); *Bergquist*, 777 F. Supp. at 1245 (same). The same is true for the forum selection clause – Cogent has made no showing that its enforcement would cause hardship or surprise. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (reaffirming strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions). Hence, the Magistrate Judge erred in ruling that the Additional Terms and Conditions constituted a material alteration as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant TurboChef Technologies, Inc. respectfully requests that the Court reject the Report and Recommendation.

Dated: June 6, 2007

Respectfully submitted,

/s/ *David A. Wollin*
David A. Wollin, #4950
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-351-4607

*Attorneys for Defendant TurboChef Technologies, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of June, 2007, I did send a true copy of the within document by electronic means (ECF) to:

Peter P.D. Leach, Esq.
One Charles Street
Providence, RI 02904

Christine M. Curley, Esq.
275 Beacon Drive
North Kingstown, RI 02852

/s/ *David A. Wollin*

419338_1.doc